## ADVERTISER PUBLISHING COMPANY, LIMITED *v.* EARL W. FASE, TAX·COMMISSIONER AND COLLECTOR.

### No. 4022.

ARGUED JANUARY 30, 1959.  DECIDED FEBRUARY 16, 1959.

### RICE, C. J.; STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an appeal by the defendant, Earl W. Fase, tax commissioner and tax collector for the Territory of Hawaii, from the judgment in the circuit court entered in favor of plaintiff and against the defendant in an action brought by the Advertiser Publishing Company, Limited, plaintiff-appellee, in the circuit court of the first circuit, on a payment of general excise taxes made under protest to the tax collector on August 17, 1954. The case involves the general excise tax rate applicable to plaintiff-appellee's advertising revenues, that is, whether the rate should be one and one-half (1½) per cent, as claimed by plaintiff-

appellee and so found by the court below, or two and one-half (2½) per cent as claimed by defendant-appellant.

The plaintiff-appellee publishes at Honolulu, Hawaii, a daily newspaper, including Sundays, of general circulation. The newspaper carries display advertising, local classified advertising, legal advertising and political advertising. The question presented is the amount of tax due on the advertising revenues for the years 1952 and 1953. In its return for these years plaintiff-appellee included its advertising as "manufacturing." The tax commissioner changed the rate to two and one-half (2½) per cent on the ground that advertising revenue should have been returned as "service business," taxable under subsection E of section 5455 of the Revised Laws of Hawaii 1945 at the rate of two and one-half (2½) per cent or, in the alternative, under subsection G which applies to any activity not included in the preceding subsections, also taxable at the rate of two and one-half (2½) per cent.

A general excise tax law was passed in 1935, being Act 141 of the Session Laws. This tax is upon the privilege of engaging in certain occupations. It defines "business" as used in the Act "shall include all activities, (personal, professional or corporate) engaged in or caused to be engaged in with the object of gain or economic benefit either direct or indirect, but shall not include casual sales." The Act provides a privilege tax against the persons on account of their business and other activities in the Territory measured by the application of rates against values, gross proceeds of sale, or gross income, as the case may be, as follows:

A. Tax on manufacturers. Millers or processors of sugar and canneries 1¼%. All other manufacturers ¼%.
B. Tax on retailers, wholesalers and producers. Retailers 1¼%; wholesalers and producers ¼%.
C. Tax upon contractors. 1¼%.
D. Tax upon theaters, amusements, radio broadcasting stations, etc. 1¼%.
E. Tax upon printers and publishers. 1%.
F. Tax on service business 1¼%.
G. Professions. ½%
H. Tax on other business. 1¼%.

In the Session Laws of 1939 an amendatory Act (Series A-42, Act 252) was passed. This Act deleted subsection E (tax upon printers and publishers) stating "* * * the intent of this paragraph being to render the various types of business defined in said deleted provision taxable under such other provisions of said Act 141 as may by their terms be applicable thereto." The tax on professions was raised to $1\frac{1}{4}\%$. Otherwise there was no change in the previous rates set forth.

In 1945 by Act 100, Series A-103, there was a further amendment as to rates; the tax on manufacturers being raised as to millers and canneries from $1\frac{1}{4}\%$ to $1\frac{1}{2}\%$; as to all other manufacturers it was left at $\frac{1}{4}\%$.

In 1947 the tax on manufacturers as to millers and canneries was raised to $2\frac{1}{2}\%$; on all other manufacturers from $\frac{1}{4}$ to $1\frac{1}{2}\%$. On all other businesses, except wholesalers which was lowered to $1\%$, and producers which was raised from $1\frac{1}{4}\%$ to $1\frac{1}{2}\%$, the tax was raised from $1\frac{1}{2}\%$ to $2\frac{1}{2}\%$.

There were additional raises in rates in 1955 and 1957 which are immaterial in this case as the tax involved herein is for the years 1952 and 1953.

The question presented in this case is whether the plaintiff's receipts from advertising are taxable at the rate of $1\frac{1}{2}\%$ as a manufacturer under subsection A, or at $2\frac{1}{2}\%$ under subsection F, tax on service business, or at the rate of $2\frac{1}{2}\%$ under subsection G, tax on other business.

Plaintiff takes the position that it "is engaged in manufacturing a newspaper as a commodity for sale" and therefore is taxable as a manufacturer at the rate of $1\frac{1}{2}\%$ instead of at $2\frac{1}{2}\%$ as a tax on service business, or, in the alternative, as a tax on other business, as claimed by the tax assessor.

The purpose of the 1939 amendment, as stated in the title of the Act itself, was "to Broaden the Tax Base and to Provide for Increased Revenues Therefrom" and, further, in the deletion of subsection E of section 1, there was no intent to repeal the tax upon printers and publishers but "the intent of this paragraph being to render the various types of business defined in said deleted provision taxable under such other provisions of said Act 141 as may by their terms be applicable thereto."

Admitting for the purpose of this case the plaintiff's contention that it "is engaged in the single, integrated business of preparing, printing and circulating a daily and Sunday newspaper" and "from this unitary business the plaintiff derives two sources of income—gross proceeds from sale of newspapers and gross receipts from the performance of advertising contracts," it still does not follow that the plaintiff "is engaged in manufacturing a newspaper as a commodity for sale and taxable as a manufacturer."

In looking for the legislative intent "There is first of all what has been termed the Golden Rule that in construing all written instruments the grammatical and ordinary sense of the words is to be adhered to unless that would lead to some absurdity or some repugnance or inconsistency with the rest of the instrument, in which case the grammatical and ordinary sense of the words may be modified so as to avoid that absurdity and inconsistency, *but no further.* This rule, originally formulated by Burton, J., afterwards received the high imprimatur of Lord Wensleydale, and has been again and again approved." (Lecture, *Law and Language,* delivered to the law students in Birmingham in 1931 by Lord MacMillan, reprinted in *Voices in Court,* from *Law And Other Things* by Lord MacMillan.)

Clearly, the publisher of a newspaper is not a manufacturer under the ordinary meaning of the word and so construing the taxation statute before us does not lead to any absurdity, repugnance or inconsistency with the rest of the Act.

A "manufacturer" is one who manufactures or employs operatives in manufacturing.

"Manufacture" is defined as: *"Transitive: 1.* To make (wares or other products) by hand, by machinery, or by other agency; as to *manufacture* cloth, nails, glass, etc.; to produce by labor, esp., now, according to an organized plan and with division of labor, and usually with machinery. *2.* To work, as raw or partly wrought materials, into suitable forms for use; as, to *manufacture* wool, iron, etc. *3.* To fabricate; to invent; also, to produce mechanically. *Intransitive:* To be employed in manufacturing; to admit of being manufactured." (Webster's New International Dictionary, 2d ed., Unabridged, With Reference History, 1951.)

A "newspaper" is defined as: "A paper printed and distributed, at stated intervals, usually daily or weekly, to convey news, advocate opinions, etc., now usually containing also advertisements and other matters of public interest; also, an organization engaged in composing and issuing such a publication." (Webster's New International Dictionary, 2d ed., Unabridged, With Reference History, 1951.)

The interpretations given foreign statutes by various courts often is of little value and the meaning of words may vary greatly depending upon the legislative intent.

However, the case of *Evening Journal Association* v. *State Board of Assessors*, 47 N. J. L. 36 (1885), is a very persuasive decision directly on the point. In this New Jersey case the same question arose as to whether a newspaper publishing company can be considered a manufacturer within the terms of a state *taxation* statute which had a proviso that the statute would not apply to *manufacturing* companies or mining companies carrying on business in the State. The newspaper contended it was a manufacturing company within the proviso of the statute. In denying the contention the court stated:

"It is true that in the production of his papers, which he sells, he employs manual labor and mechnical skill. But so does the sculptor who produces, as the result of his handiwork and genius, the statue; so does the painter who executes his painting with his palette and his brush; so does the lawyer who prepares his brief, or the author who writes a book. But neither the sculptor nor the painter is classified as a manufacturer by reason of his works; nor would the lawyer or the author be regarded as a manufacturer though they employed a printer— the former to print his brief, and the latter his book. In the ordinary and general use of the word 'manufacturer,' the publishing of a newspaper does not come within the popular meaning of the term. As was said by the court in the case last cited, 'no definition of the word "manufacturer" has ever included the publisher of a newspaper, and the common understanding of mankind excludes it. * * * It gives employment to printing-presses, types and editors, and yet, in the whole history of news-

papers from the close of the seventeenth century, this word "manufacturer" has never been applied to them or appropriated by them in the whole range of English literature. * * *'

"A newspaper has intrinsically no value above that of the unprinted sheet. Indeed, it has less value, considered intrinsically, as a mere article of merchandise. Its value to its subscribers arises from the information it contains, and its profit to the publisher is derived, in a great measure, from the advertising patronage it obtains by reason of the circulation of the paper induced by the enterprise and ability with which it is conducted. Neither in the nature of things nor in the ordinary signification of language, would a newspaper be called a manufactured article or its publisher a manufacturer.

"We think that the Evening Journal Association is not a manufacturing company within the meaning of the proviso in question, and that the tax in question was properly assessed upon it."

The case of *Oswald* v. *St. Paul Globe Publishing Co.,* 60 Minn. 82, 61 N. W. 902 (1895), while not dealing with taxes but the question of the liability of stockholders under the statute exempting manufacturing corporations, the court in holding that the newspaper publishing company was not a manufacturer, said:

"The business of publishing an ordinary daily or weekly newspaper is at most only partly a manufacturing business, and that part is merely incidental to the main or principal part of the business, which is collecting and selling news, preparing and selling literary work, and other editorial work. Even the advertising department of such a newspaper cannot be considered merely as the printing and distribution of advertisements handed in by advertisers, so as to amount in itself to a merely mechanical or manufacturing business. The advertiser buys the use of the news and the literary and editorial work as a vehicle on which to convey his advertisements into the hands and to the notice of the readers of the paper, and he pays much more for such use of the news and literary and editorial work than he does for the mere mechanical work of printing and distributing his advertisements."

In *State* v. *Crounse*, 105 Neb. 672, 181 N. W. 562 (1921), where the defendant was charged with violating the statute prohibiting employment of women in manufacturing, mechanical or mercantile business for more than 9 hours a day or at night after 10 p.m., the court in holding that a newspaper was not a manufacturing, mechanical or mercantile business stated:

> "The work which characterizes the business of publishing a newspaper is the gathering and disseminating of news, the furnishing to subscribers of various kinds of information, the carrying of advertisements, and the writing of editorials and articles on matters of public interest. Machinery and mechanical labor are indispensable, but are only incidental to the carrying on of the main purpose of the business. A newspaper is the product of intellectual effort, not of mechanical labor. That such business is not manufacturing is supported by the following decisions: Oswald v. St. Paul Globe Publishing Co., 60 Minn. 82, 61 N. W. 902; In re Capital Publishing Co., 10 MacArthur (D. C.) 405; Evening Journal Ass'n v. State Board of Assessors, 47 N. J. Law, 36, 54 Am. Rep. 114; Press Printing Co. v. State Board of Assessors, 51 N. J. Law, 75, 16 Atl. 173."

The court might very well have held that such employment came within the provisions of the Act, considering its purpose. See *Ash Sheep Co.* v. *United States,* 252 U. S. 159.

*In re Capital Publishing Co.,* 3 MacArthur 405, 411 (D. C.), the court held that a newspaper publishing company was not included under the designation of a manufacturer under a bankruptcy statute. The court stated that publishing companies printing books, etc., would come under the designation of a manufacturer, saying:

> "Words in a statute are to be taken in their ordinary and familiar signification, and regard is to be had to their general and popular use. The court will presume that they were used to express their meaning in common usage."

Plaintiff lays much emphasis on the Louisiana case of *State* v. *Dupre et al.,* 42 La. Ann. (1890), 7 So. 727. This case held that newspaper publishers were manufacturers within the provision of

a state constitution exempting all manufacturers, except those of liquor, tobacco, etc., from taxation. The majority opinion stated:

"While we admit that newspaper publishing does not fall within the common usage of the term 'manufacturer,' the constitution (Article 207) attaches a broader meaning to the word by embracing within it the occupations of stationers, boatbuilders, chocolate makers, etc., which are not ordinarily considered as manufacturers, any more than newspaper and book publishers."

One judge concurred on the ground that there was *"no provision in the revenue act to warrant the enforcement of a license tax against the business of printing and publishing a newspaper."* (Emphasis added.) Another judge, in dissenting, stated categorically that publishing a newspaper is not manufacturing, saying: "After the paper has been printed upon, it is not used as goods, commodities, merchandise, nor for physical want, necessity, or convenience. It is used exclusively as an object for an intellectual purpose."

Plaintiff contends that the printing and publishing of a newspaper is "preparing" a paper "for sale," and "preparing" a paper "for sale" comes within subsection A (tax on manufacturers), giving emphasis to the words "preparing for sale" as used in subsection A.

There is a rule of construction embodying the words *noscitur a sociis* which may be freely translated as "words of a feather flock together," that is, the meaning of a word is to be judged by the company it keeps. This is really a particular rule under the general rule of interpretation that the meaning to be given to a writing is controlled by the context; taken from the context, both words and sentences may be made to mean something very different from what the authors intended.

A case that seems to be particularly appropriate to the matter before us is that of *Suabedissen-Wittner. Dairy* v. *Department of Treasury,* 105 Ind. App. 626, 16 N. E. (2d) 964. Portions of the syllabus state:

"Under statute imposing tax upon entire gross income of every person engaged in manufacturing, compounding, or pre-

paring for sale any article or commodity, the Legislature intended the phrase 'preparing for sale' to partake of the same character as the words 'manufacturing' or 'compounding,' as against contention that process of pasteurization of milk was within the phrase 'preparing for sale' and therefore that retail sales of milk by dairy to consumers were not taxable as retail sales."

"A dairy's income which was derived from retail sales directly to consumers of milk pasteurized by dairy was not derived from business of 'manufacturing, compounding, or preparing for sale' any article or commodity within statute imposing income tax of one-fourth per cent. thereon."

Another case under the Indiana gross income tax (which is similar to our own gross income tax) is that of *Department of Treasury of Indiana* v. *Ridgely,* 211 Ind. 9, 4 N. E. (2d) 557, which held that income derived by retail druggists from filling prescriptions was derived from retail business and not compounding or manufacturing.

As to the contention that tax laws must be strictly construed, the statement by Judge Cooley in Crawford's *Statutory Construction* seems to be particularly appropriate to the construction of tax laws.

"If the rule of strict construction can be effectively criticized, the same is equally true with the rule of liberal construction. In fact, Judge Cooley has done so.

" 'There must surely be a just and safe medium between a view of the revenue laws which treats them as harsh enactments to be circumvented and defeated if possible, and a view under which they acquire an expansive quality in the hands of the court, and may be made to reach out and bring within their grasp, and under the discipline of their severe provisions, subjects and cases which it is only conjectured may have been within their intent. Revenue laws are not to be construed from the standpoint of the taxpayer alone, nor of the government alone. Construction is not to assume either that the taxpayer, who raises the question of his legal liability under the laws, is necessarily seeking to avoid a duty to the

state which protects him, nor, on the other hand, that the government, in demanding its dues, is a tyrant which, while too powerful to be resisted, may justifiably be obstructed and defeated by any subtle device or ingenious sophism whatsoever. There is no legal presumption either that the citizen will, if possible, evade his duties, or, on the other hand, that the government will exact unjustly or beyond its needs. All construction, therefore, which assumes either the one or the other, is likely to be mischievous and to take one-sided views, not only of the laws, but of personal and official conduct.' " (Crawford, *Statutory Construction, Strict and Liberal Construction*, § 259, p. 511.)

Again, in *Evening Journal Association* v. *State Board of Assessors*, 47 N. J. L. 36, 40, the statement is made that:

"*The interpretation of words in their popular sense* rather than according to their scientific meaning *is peculiarly required in the construction of tax laws*, in the enactment of which the legislature must needs adopt a classification of persons and property for purposes of taxation—a classification determined by the legislative conception of the policy of subjecting certain persons, property, occupations or business to taxation according to popular notions or ideas of the propriety of such taxation. In the construction of such laws the courts will incline strongly towards the popular signification of language. In that way the legislative intent is most apt to be reached." (Emphasis added.)

The language of the Act before us, as amended, seems clear and free from ambiguities and, if so, "there is no occasion for construction and the statute must be given effect according to its plain and obvious meaning, but where the language used is of doubtful meaning or adherence to the strict letter of the statute would lead to an absurdity or contradictory provisions some degree of implication may be called in to aid the intent of the legislature." (*Territory* v. *Fasi*, 40 Haw. 478; *Territory* v. *Morita, et als.*, 41 Haw. 1.)

As stated in *Territory* v. *Morita*, "Statutes are open to construction only where the language used in the statute requires inter-

pretation, that is, where it is ambiguous. Rules of interpretation are resorted to for the purpose of *resolving an ambiguity* and not for creating one." (Emphasis added.)

It is clear in this case that the legislature by the amendment of 1939 did not intend to remove the tax upon printers and publishers. It also seems clear the ordinary use of the language "manufacturer" does not include a newspaper publisher. However, if this is an ambiguity, the court must seek to find the legislative intent by following the rules of construction. We have given the first, the Golden Rule, *supra*. Other rules are that in construing a statute the court may look to the objects to be accomplished, the evils and mischiefs to be remedied, and place on the statute a reasonable construction that will best effect its purpose. Under such circumstances, the reports of the committees of the legislature may be considered.

The report in the Senate Journal of 1939 on this amendatory Act (Standing Committee Report 164, page 710) shows conclusively that the tax on printers and publishers was not intended to be abolished nor to be included under subsection A. The report shows that the purpose of the bill is "to *increase* the revenues of the Territory and to spread the tax base as far as possible." In deleting subsection E there was no intent to repeal the tax on printers and publishers but, on the contrary, the intent was to increase the same, as the report put those under subsection E (printers and publishers) "in the *regular income tax class, which pays now the rate of one and one-quarter percent."* (Emphasis added.)

The tax on businesses under subsection E could not have come under A (tax on manufacturers) because, while the tax on millers and canneries was $1\frac{1}{4}\%$, the tax on all other manufacturers not otherwise taxed was $\frac{1}{4}\%$. The only provisions at the $1\frac{1}{4}\%$ rate, other than on millers and canneries, were on retailers, contractors, theaters and amusements, service business and "other business." The intent, then, must have been either to place printers and publishers under subsection H (tax on other business) or F (service business). Under either construction the rate would have been $1\frac{1}{4}\%$, subsequently raised to $2\frac{1}{2}\%$ for the tax period covered under this case.

Another rule is that the court may look to the title of a statute when construing an ambiguous statute or construing an obscure passage or expression therein. "But the title of an act cannot limit the plain meaning of its text, although it may be looked to to aid in construction in cases of doubt." (*Strathearn S. S. Co.* v. *Dillon,* 252 U. S. 348, 354.) See also 50 American Jurisprudence, *Statutes,* sections 310 and 311, on pages 298 and 299, citing cases.

In the present case the title "* * * to Broaden the Tax Base and to Provide for Increased Revenues Therefrom * * *" corresponds with the intention as expressed in the body of the Act and as stated in the senate report heretofore referred to. Inasmuch as only two items were changed by the amendatory Act of 1939, to interpret the Act as reducing the tax on printers and publishers by ¾% would certainly not conform to the title of the Act.

This case requires us to decide only that the newspaper does not come under subsection A (manufacturer) which is too clear for further comment. While a strong argument could be made that the business of printing and publishing a newspaper, particularly the advertising portion thereof, might be classified as a service business, it appears to us that the business should be taxed as a whole as contended for by plaintiff (*Department of Treasury of Indiana* v. *Ridgely, supra; Arizona State Tax Commission* v. *Ensign,* 75 Ariz. 220, 254 P. [2d] 1029), but not as a manufacturing business. The amendment of 1939 clearly places the tax under subsection H (tax on other business) and the taxation rate should be 2½%.

The construction of a statute is a matter of law and not of fact, so the argument that this court is governed by the findings of fact by the court below is without merit.

Reversed.

*Rhoda V. Lewis,* Deputy Attorney General (also on the briefs) for appellant.

*Harold S. Wright* (*Smith, Wild, Beebe & Cades* with him on the briefs) for appellee.