**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000728
20-NOV-2014
09:45 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

In the Matter of the Tax Appeal of
KAHEAWA WIND POWER, LLC,
Taxpayer-Appellant-Appellee/Cross-Appellant,
v.
COUNTY OF MAUI, Appellee-Appellant/Cross-Appellee.

NO. CAAP-12-0000728

APPEAL FROM THE TAX APPEAL COURT
(TX. NO. 10-1-1246 and Consolidated Cases
TX NOS. 10-1-1247, 10-1-1248, 10-1-1249 & 11-1-0035)

NOVEMBER 20, 2014

FOLEY, PRESIDING JUDGE, FUJISE, and GINOZA, JJ.

OPINION OF THE COURT BY GINOZA, J.

In this consolidated tax appeal, the County of Maui
(County) appeals, and Kaheawa Wind Power, LLC (Kaheawa) cross-
appeals, from a Final Judgment issued on July 24, 2012, by the
Tax Appeal Court of the State of Hawai'i (Tax Appeal Court).[1]

This case arises from Kaheawa's challenges to real
property assessments issued by the County for taxing property on
Maui (Property) that Kaheawa leases from the State of Hawai'i
(State).  Kaheawa operates a business on the Property producing

---

[1] The Honorable Gary W.B. Chang presided.

electrical power from wind energy, with the power generated by twenty wind turbines. There are two issues before us on appeal: first, whether the wind turbines located on the Property could be considered in the "building" valuation for the real property assessments under the Maui County Code (MCC); and second, whether property assessments issued by the County in 2010 validly assessed the Property for retroactive taxes applicable to the years 2007-2009.

In its appeal, the County asserts that the Tax Appeal Court erred by ruling that the wind turbines could not be considered in the "building" valuation for the real property assessments, and thus, erred in granting Kaheawa's motion for partial summary judgment and denying the County's motion for partial summary judgment on this issue.

In its cross-appeal, Kaheawa contends that the Tax Appeal Court erred by granting partial summary judgment to the County as to the retroactive assessments of the Property for taxes. Kaheawa asserts that a factual dispute exists over when the County discovered that Kaheawa was leasing the Property, which made the Property taxable and which affects whether the assessments were timely. Kaheawa also contends that the Tax Appeal Court erred in holding that the County had an unlimited time period in which to add the Property as "omitted property" for assessment and taxing purposes.

We affirm the Tax Appeal Court's Final Judgment and hold that: (1) the wind turbines do not constitute "real property" for tax purposes under the MCC; and (2) the County was entitled to retroactively assess the Property for taxes in this case because the MCC does not create an express or implied time limit in which the County must add "omitted property" to tax assessment lists.

I. Case Background

    A. Stipulated Facts

        The parties agreed to stipulated facts, which provide in relevant part:

2

1.    This consolidated action is a real property tax appeal, filed by Kaheawa with respect to the parcel of land identified as Tax Map Key 4-8-001-001-6001 (the "Subject Property").  The present consolidated action involves tax years 2007 through 2011.

2.    The Subject Property is located in the West Maui mountain area, roughly three miles mauka from Maalaea harbor.  The Subject Property is leased from the State of Hawaii.  Kaheawa acquired a leasehold interest in the Subject Property by executing General Lease No. S-5731 dated January 19, 2005 (the "Lease"). . . . .

3.    The Taxpayer-Appellant, Kaheawa, is engaged in the business of producing electrical power from wind energy. There are currently 20 wind turbines located on the Subject Property, each capable of independently generating approximately 1.5 megawatts of electricity.  This is a commercial power-generating business; the electricity is sold to Maui Electric Company, Limited (on an "as-available" basis) and ultimately used by businesses and/or consumers.

. . . .

5.    On or about May 17, 2010, the County issued an "AMENDED NOTICE OF PROPERTY ASSESSMENT" for each of the 2007, 2008 and 2009 tax years. . . . .

6.    On or about March 15, 2010, the County issued a "NOTICE OF PROPERTY ASSESSMENT" for the 2010 tax year. . . . .

7.    On or about March 15, 2011, the County issued a "NOTICE OF PROPERTY ASSESSMENT" for the 2011 tax year. . . . .

8.    The County is treating the turbines and the towers on which the turbines are mounted as real property included in "building" value for real property tax assessment purposes.  Kaheawa asserts that the turbines and the associated towers are equipment and machinery, moveable and not real property.

9.    The turbines are mounted on towers, which are bolted onto poured concrete foundation slabs.  Kaheawa does not dispute that the poured concrete slabs are affixed to the land,[1] and thus are real property, included within "building" value for real property tax purposes.

10.    The turbines and the towers are bolted in place. They can be unbolted and removed without any harm to either the equipment or the land.

. . . .

13.    The turbines and towers were purchased as commercially available hardware.[2]

. . . .

19.    For building permit purposes, Kaheawa had to submit plans and drawings for the concrete foundation slabs. Kaheawa did not have to obtain a building permit, or submit plans and drawings, for the turbines and the towers.

20. The towers came with an instruction booklet from the manufacturer, as opposed to a set of blueprints for construction drawn by an architect. . . .

21. When the turbines and towers were purchased and placed in service, Kaheawa claimed a Capital Goods Excise Tax Credit for Hawaii state income tax purposes. Under HRS §235-110.7, the Capital Goods Excise Tax Credit only applies to "tangible personal property" that meets certain requirements. Thus, in order to get the credit, the property involved must be "tangible personal property." HRS §235-110.7(e) says that:

> "Tangible personal property" does not include tangible personal property which is an integral part of a building or structure . . .

22. The Department of Taxation of the State of Hawaii allowed the Capital Goods Excise Tax Credit claimed by Kaheawa.

23. Kaheawa's Lease specifically requires the removal of the turbines and towers at the end of the Lease term, subject to a right of the Lessor to elect to take ownership. . . .

---

[1] "Affixed" meaning that the slabs could not be removed without significant damage to the slabs themselves and/or the surrounding land.

[2] As with many products, "Some assembly required."

## B. Procedural History

Kaheawa initiated this action by filing appeals with the Tax Appeal Court from the respective notices and amended notices of property assessment issued by the County for the years 2007 through 2011. In its appeals, Kaheawa challenged the County's treatment of alleged personal property as being part of the building value. Kaheawa also challenged the County's issuance of amended notices in 2010 that retroactively assessed the Property for the previous years of 2007, 2008, and 2009.[2]

On January 18, 2012, Kaheawa filed a motion for partial summary judgment, arguing that the wind turbines and towers are not real property for purposes of real property taxes. On January 19, 2012, the County filed a cross motion on the same issue. At a February 13, 2012 hearing, the Tax Appeal Court held

---

[2] These separate appeals were consolidated into a single action before the Tax Appeal Court.

that the wind turbines and towers do not constitute real property for real property tax assessment purposes. On April 9, 2012, the Tax Appeal Court filed an order denying the County's motion for summary judgment, and also an order granting Kaheawa's motion for partial summary judgment, holding as a matter of law that "the towers and turbines which are located on the subject property are not within the definition of 'real property' for purposes of the real property tax."

The Tax Appeal Court's April 9, 2012 orders thus determined that the wind turbines and towers could not be included in the real property valuation for the assessments. Because the assessments covered more than just the wind turbines and towers, a remaining issue was whether the County properly issued amended notices of property assessment in 2010 retroactive back to 2007, 2008, and 2009.

On June 7, 2012, the County filed a motion for partial summary judgment, arguing that the 2010 amended notices of property assessment for 2007, 2008, and 2009 were proper. The County explained that up until 2005, the Property was exempt from taxation because it is owned by the State and real property owned by the State is exempt from property taxes under MCC § 3.48.530 (2014). In 2005, the State leased the Property to Kaheawa, and thus the Property became taxable. The County argued that although the amended property assessments were not issued until May 17, 2010, the assessments were proper and not invalid due to their timing.

On June 22, 2012, Kaheawa filed a memorandum in opposition to the County's motion for partial summary judgment, arguing that summary judgment was inappropriate. Specifically, Kaheawa argued that the County "discovered" the lease when the County received the lease with other recorded documents in 2005, and that upon discovering the lease, the County had a duty to add the Property to the tax assessment list within a reasonable time.

On July 16, 2012, the Tax Appeal Court held a hearing on the County's motion for partial summary judgment and granted the motion. The Tax Appeal Court's subsequent order stated that

5

"[t]he Court finds that there is not an express or implied time limitation on the County of Maui's ability to make real property tax assessments, and thus the County was legally entitled to make retroactive assessments of the subject property."

On July 24, 2012, the Tax Appeal Court entered the Final Judgment.

On August 22, 2012, the County filed a notice of appeal from the Final Judgment challenging the grant of partial summary judgment to Kaheawa regarding the wind turbines. On August 23, 2012, Kaheawa filed a notice of appeal from the Final Judgment challenging the grant of partial summary judgment to the County regarding the retroactive assessments.[3]

## II. Standard of Review

We review the Tax Appeal Court's grant of summary judgment *de novo*. *Kamikawa v. Lynden*, 89 Hawai'i 51, 54, 968 P.2d 653, 656 (1998). Moreover, "[i]nasmuch as the facts here are undisputed and the sole question is one of law, we review the decision of the Tax Appeal Court under the right/wrong standard." *Id.* (citations and internal quotation marks omitted).

In this case, we must interpret provisions of the Maui County Code.

> When interpreting a municipal ordinance, we apply the same rules of construction that we apply to statutes. The interpretation of a statute is a question of law reviewable *de novo*. The purpose of the ordinance may be obtained primarily from the language of the ordinance itself; however, in order to construe the ordinance in a manner consistent with its purpose, the language must be read in the context of the entire ordinance.

---

[3] On September 10, 2012, the Tax Appeal Court entered a First Amended Final Judgment, but there is nothing in the record to indicate the basis for this amended judgment. It appears that the First Amended Final Judgment is a nullity because it was entered after the notices of appeal were filed and without any jurisdictional basis. "Generally, the filing of a notice of appeal divests the trial court of jurisdiction over the appealed case." *TSA Int'l Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 265, 990 P.2d 713, 735 (1999). Granted, Rule 4 of the Hawai'i Rules of Appellate Procedure provides a few limited exceptions to the general rule, but, otherwise, a trial court may not usually make substantive changes to a judgment after the filing of the notice of appeal unless the presiding appellate court issues an order that remands the case to the trial court for that purpose. *Life of the Land v. Ariyoshi*, 57 Haw. 249, 252, 553 P.2d 464, 466 (1976).

*Weinberg v. City & Cnty. of Honolulu*, 82 Hawai'i 317, 322, 922 P.2d 371, 376 (1996) (citations and internal quotation marks omitted).

## III. Discussion

### A. The Wind Turbines Are Not "Real Property" Pursuant To MCC § 3.48.005

The County contends that the Tax Appeal Court erred in granting partial summary judgment to Kaheawa on the basis that the wind turbines are not taxable "real property" under MCC § 3.48.005 (2012).[4] The County does not assert that any material facts are in dispute, but argues that the Tax Appeal Court erred in interpreting applicable provisions of the MCC.

At the time the County assessed Kaheawa's Property relevant to this case,[5] MCC § 3.48.005(B) defined "real property" as follows:

> "Property" or "real property" means and includes all land and appurtenances thereof and the buildings, structures, fences, and improvements erected on or affixed to the same, and any fixture which is erected on or affixed to such land, building structures, fences and improvements, including all machinery and other mechanical or other allied equipment and the foundations thereof, whose use thereof is necessary to the utility of such land, buildings, structures, fences, and improvements, or whose removal therefrom cannot be accomplished without substantial damage to such land, buildings, structures, fences, and improvements, excluding, however, any growing crops.

Given the arguments of the parties, the County's appeal turns on whether the wind turbines are either "improvements" or "fixtures" within the definition of "real property" under MCC § 3.48.005.

---

[4] We note that, although the Tax Appeal Court's ruling held that both the wind turbines and towers were not taxable real property, the County's points of error and briefing on appeal only contend error with regard to the *wind turbines*. We thus limit our review to whether the wind turbines could be included in the assessments as real property.

[5] It does not change our analysis, but we note that subsequent to the relevant period in this case, the Maui County Council amended the definition of "real property" in MCC § 3.48.005 and added language pertaining to "wind energy conversion property that is used to convert wind energy to a form of usable energy[.]" MCC § 3.48.005 (2013).

### 1. The Exemption In MCC § 3.48.520 Does Not Help To Define "Improvement"

The County first contends that the wind turbines are taxable as "alternate energy improvements." To be clear, the County does not point to any provision in the MCC that provides for a tax on alternate energy improvements. Rather, the County points to the provisions in MCC § 3.48.520 (2014) that set forth a tax *exemption* related to alternate energy improvements. MCC § 3.48.520 provides, in relevant part:

> 3.48.520 **Alternate energy improvements.**
>
> A. As used in this section, "alternate energy improvement" means any construction or addition, alteration, modification, improvement, or repair work undertaken upon or made to any building which results in:
>
> 1. The production of energy from a source, or uses a process which does not use fossil fuels, nuclear fuels or geothermal source. Such energy source may include but shall not be limited to solid wastes, wind, solar, or ocean waves, tides, or currents. Alternate energy production or energy byproducts transferred, marketed, or sold on a commercial basis shall not qualify for exemption under the provisions of this section. . . .
>
> . . . .
>
> B. The value of all improvements in the county (not including a building or its structural components, except where alternate energy improvements are incorporated into the building and then only that part of the building necessary to such improvement) actually used for an alternate energy improvement shall be exempted from the measure of the taxes imposed by this chapter.

(Emphasis added.)

The County argues that, because MCC § 3.48.005 taxes "improvements" to the land, we must consider the exemption in MCC § 3.48.520 because it is critical in determining whether the wind turbines are "improvements." In sum, the County's position is that MCC § 3.48.520 contemplates alternative energy improvements, including wind energy improvements, and the County chose to exempt from taxation only those alternative energy improvements not used for commercial purposes. Although this argument might have surface appeal, the actual language of MCC § 3.48.520 does not support the County's position and at most creates ambiguity.

The County argues extensively that we must give significant effect to the "or" contained in the definition of "alternate energy improvement" in MCC § 3.48.520, subsection (A). Apparently in recognition of the fact that the wind turbines are not attached to or part of any building, the County argues that the definition of "alternate energy improvement" in subsection (A) applies to any "construction" **or** any "addition, alteration, modification, improvement, or repair work undertaken upon or made to any building[,]" which results in "[t]he production of energy from a source, or uses a process which does not use fossil fuels, nuclear fuels or geothermal source." The County's argument concludes that the wind turbines in this case are within the standard definition of "construction,"[6] and thus are an "alternate energy improvement." In our view, the County's arguments miss the mark and lead to ambiguity.

The County's arguments ignore the actual tax exemption language, which is set out in MCC § 3.48.520, *subsection (B)*. Subsection (B) provides in relevant part that "[t]he value of all improvements in the county . . . actually *used for* an alternate energy improvement shall be exempted from the measure of the taxes imposed by this chapter." (Emphasis added.) Thus, if anything, MCC § 3.48.520 recognizes that there may be "improvements" that are "*used for* an alternate energy improvement[,]" (emphasis added) but it does not suggest the reverse -- that all "alternate energy improvements" are "improvements" for purposes of MCC § 3.48.005. Based on our reading of MCC § 3.48.520, that provision does not dictate that the wind turbines in this case are "improvements" under MCC § 3.48.005.

We further note that Hawai'i courts have held that the rule of strict construction applies in tax cases and if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer. *See Narmore v.*

_____

[6] Relying on the definition provided in *Black's Law Dictionary* (7th ed. 1999), the County offers the definition of "construction" as "[t]he act of building by combining or arranging parts or elements; the thing so built."

*Kawafuchi*, 112 Hawai'i 69, 82, 143 P.3d 1271, 1284 (2006), *superseded by statute on other grounds*, HRS §§ 232-16, -17 (Supp. 2013); *In re Fasi*, 63 Haw. 624, 629, 634 P.2d 98, 103 (1981); *In re Hawaiian Tel. Co.*, 61 Haw. 572, 578, 608 P.2d 383, 388 (1980). At a minimum, we conclude there is doubt as to the County's construction of the exemption in MCC § 3.48.520 as indicating that the wind turbines must be taxable "improvements" under MCC § 3.48.005.

### 2. The Wind Turbines Are Not "Improvements"

The County next argues that the wind turbines are taxable under the standard definition of "improvements." The County urges this court to apply the Black's Law Dictionary definition, which defines "improvement" as "[a]n addition to real property, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance." *Black's Law Dictionary* 826 (9th ed. 2009). Considering the particular issue before us, we disagree that the broad definition of "improvement" advanced by the County applies to the wind turbines in this case.[7]

As recognized in the parties' stipulation, Kaheawa asserts that the wind turbines are equipment and machinery. The County, in its opening brief, also expressly recognizes that "[t]he turbines are plainly machinery." (Emphasis added.) In MCC § 3.48.005, certain types of "machinery" are incorporated as part of the description of a "fixture." Given this context, and reading MCC § 3.48.005 as a whole, applying the broad definition of improvement asserted by the County would ignore the more specific language related to fixtures and machinery. As Kaheawa points out, the Hawai'i Supreme Court has recognized the doctrine of statutory construction known as *noscitus a sociis*, which helps to guide our interpretation of MCC § 3.48.005 in this case.

> There is a rule of construction embodying the words *noscitus a sociis* which may be freely translated as "words of a feather flock together," that is, the meaning of a word is to be judged by the company it keeps. This is really a

_____

[7] We make no comment on whether the definition of "improvement" proposed by the County may apply in other circumstances.

> particular rule under the general rule of interpretation that the meaning to be given to a writing is controlled by the context; taken from the context, both words and sentences may be made to mean something very different from what the authors intended.

*Advertiser Publ'g Co. v. Fase*, 43 Haw. 154, 161 (Haw. Terr. 1959); *see also State v. Deleon*, 72 Haw. 241, 244, 813 P.2d 1382, 1384 (1991) (citing *Advertiser* for the above proposition); *In re Pac. Marine & Supply Co.*, 55 Haw. 572, 578, 524 P.2d 890, 895 (1974) (applying *noscitus a sociis* in an appeal from the Tax Appeal Court).  As further elaborated,

> [n]oscitur a sociis may be explained as a doctrine of statutory construction that requires that the more general and the more specific words of a statute must be considered together in determining the meaning of the statute, and that <u>the general words are restricted to a meaning that should not be inconsistent with, or alien to, the narrower meanings of the more specific words of the statute</u>.

*In re Pac. Marine & Supply Co.*, 55 Haw. at 578 n.5, 524 P.2d at 895 n.5 (emphasis added); *see also Kam v. Noh*, 70 Haw. 321, 326, 770 P.2d 414, 418 (1989) (noting as to statutory construction that "each part or section should be construed in connection with every other part or section so as to produce a harmonious whole[]").

If the County's broad interpretation of an improvement was applied in this case, the language in MCC § 3.48.005 related to fixtures and machinery would be rendered meaningless.

> It is a cardinal rule of statutory construction that the courts are bound, if possible, to give effect to all parts of a statute, and no sentence, clause or word shall be construed as surplusage if a construction can be legitimately found which will give force to and preserve all the words of the statute.

*In re Ainoa*, 60 Haw. 487, 490, 591 P.2d 607, 609 (1979); *see also Potter v. Hawaii Newspaper Agency*, 89 Hawai'i 411, 422, 974 P.2d 51, 62-63 (1999) ("Our rules of statutory construction require us to reject an interpretation of [a] statute that renders any part of the statutory language a nullity.").  The term "improvements" still encompasses a variety of things and is not rendered

meaningless by our interpretation of MCC § 3.48.005.[8] But here, it cannot apply to "machinery" which is specifically addressed as part of the "fixture" analysis.

We must therefore consider whether the wind turbines are the type of "machinery" that come within the parameters of "fixture" set forth in MCC § 3.48.005.

### 3. The Wind Turbines Are Not "Fixtures" As Provided In MCC § 3.48.005

The relevant part of MCC § 3.48.005 related to "fixtures" provides that "real property" includes

> any fixture which is erected on or affixed to such land, building structures, fences and improvements, including all machinery and other mechanical or other allied equipment and the foundations thereof, whose use thereof is necessary to the utility of such land, buildings, structures, fences, and improvements, or whose removal therefrom cannot be accomplished without substantial damage to such land, buildings, structures, fences, and improvements, excluding, however, any growing crops.

We first note that the parties have stipulated that the wind turbines are mounted on towers, which are bolted onto poured concrete foundation slabs. Kaheawa does not dispute that the concrete slabs are affixed to the land and that the slabs are thus part of the real property. Given these facts, the County contends, and Kaheawa does not raise any counter argument, that the turbines are affixed to the real property.

Thus, the wind turbines are "fixtures" and consequently "real property" in this case if: (1) the use of the wind turbines is necessary to the utility of the land, buildings, structures, fences, and improvements; or if (2) the removal of the wind

---

[8] An "improvement" is broader than a "fixture." In general terms,

> a fixture by definition is an improvement to real property, but an improvement to real property need not be a fixture. Stated another way, a fixture is a former chattel which, while retaining its separate physical identity, is so connected with the reality [sic] that a disinterested observer would consider it a part thereof, whereas an improvement, after being installed, may not have an identity separate from the overall system or building in which it is located.

35A Am. Jur. 2d *Fixtures* § 2 (2001) (footnote omitted).

turbines cannot be accomplished without substantial damage to the land, buildings, structures, fences, and improvements. *See* MCC § 3.48.005.

The parties do not dispute that removal of the wind turbines can be accomplished without damage to the land or any structures or improvements. The parties have stipulated that the turbines and towers are bolted in place and that "[t]hey can be unbolted and removed without any harm to either the equipment or the land." Moreover, the County does not argue that there are any disputed facts indicating that damage would result from removal of the wind turbines. Thus, the wind turbines are *not* "fixtures" under that prong.

However, the parties dispute whether the wind turbines are "necessary to the utility of [the] land, buildings, structures, fences, and improvements[.]" The County argues that the land is in use as a wind farm, and the wind turbines are absolutely necessary to that utility. Kaheawa argues instead that the proper construction of MCC § 3.48.005 requires that the machinery be necessary to the general inherent utility of the land or realty. The MCC provides no guidance as to whether "utility" should be construed to mean general utility or utility that is specific to the particular business or use of land at the time. We therefore look to traditional common law "fixture" analysis for guidance. *See Peters v. Weatherwax*, 69 Haw. 21, 27, 731 P.2d 157, 161 (1987) ("[T]he interpretation of well-defined words and phrases in the common law carries over to statutes dealing with the same or similar subject matter." (citation and internal quotation marks omitted)).

Traditional common law "fixture" analysis supports Kaheawa's assertion that the "utility" in question refers to the general inherent utility of the land or realty. The traditional common law test for determining whether an item of personal property has become a "fixture" requires three elements:

> (1) the actual or constructive annexation of the article to the realty, (2) <u>the adaptation of the article to the use or purpose of that part of the realty with which it is connected</u>, and (3) the intention of the party making the

> annexation to make the article a permanent accession to the
> freehold.

35A Am. Jur. 2d *Fixtures* § 4 (emphasis added); *see Cartwright v.
Widemann,* 9 Haw. 685, 690-91 (Haw. Kingdom 1892) *superseded on
other grounds,* RLH § 8871 (1945), *as recognized in Hess v. Paulo,*
38 Haw. 279 (Haw. Terr. 1949); *Arizona Dep't of Revenue v.
Arizona Outdoor Advertisers, Inc.,* 41 P.3d 631, 633-34 (Ariz. Ct.
App. 2002); *Perez Bar & Grill v. Schneider,* 2012 WL 6105324,
2012-Ohio-5820, at ¶16 (Ohio Ct. App. 2012);[9] 8 Richard R.
Powell, *Powell on Real Property* § 57.05[2][a], at 57-29 (Michael
Allen Wolf ed., 2012); 5 *Thompson on Real Property* § 46.01(e), at
710 (David A. Thomas & N. Gregory Smith eds., 2007).

For purposes of this case, in determining how to
construe "utility" in MCC § 3.48.005, we focus on the second
element of the traditional fixture test -- "the adaptation of the
article to the use or purpose of that part of the realty with
which it is connected[.]" Although we recognize that courts
throughout the country are not consistent in how they view this
part of the test, we believe the discussion in *Zangerle v.
Republic Steel Corp.,* 60 N.E.2d 170 (Ohio 1945) most
appropriately guides our decision in this case. In *Zangerle,* a
company that operated steel plants challenged the tax assessment
of machinery and equipment as improvements on the land rather
than as personal property. *Id.* at 173. Addressing the second
part of the traditional fixture test, the Ohio Supreme Court
relied on the following:

> The general principle to be kept in view, underlying all
> questions of this kind, is the distinction between the
> business which is carried on in or upon the premises, and
> the premises, or locus in quo. The former is personal in
> its nature, and articles that are merely accessory to the
> business, and have been put on the premises for this

---

[9] Pursuant to the Ohio Supreme Court's "Supreme Court Rules for the
Reporting of Opinions" (Rep.Op.R.), "[t]he Supreme Court hereby designates the
Supreme Court website as the *Ohio Official Reports* for opinions of the courts
of appeals and the Court of Claims as of July 1, 2012." Rep.Op.R. 3.2.
Additionally, "[a]ll opinions of the courts of appeals issued after May 1,
2002 may be cited as legal authority and weighted as deemed appropriate by the
courts without regard to whether the opinion was published or in what form it
was published." Rep.Op.R. 3.4. *Perez Bar & Grill,* decided on December 10,
2012, can be found on the Ohio Supreme Court website.

> purpose, and not as accessions to the real estate, retain the personal character of the principal to which they appropriately belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not peculiarly for the benefit of a present business which may be of a temporary duration, become subservient to the realty and acquire and retain its legal character.

*Id.* at 177 (citation and internal quotation marks omitted).

The principles discussed in *Zangerle* are consistent with the only Hawai'i case that appears to touch on this issue. In *Cartwright*, the Supreme Court of the Kingdom of Hawai'i held that machinery used as part of an iron works company (including lathes, an emery wheel, a drill press, a milling machine, a shaping machine and a grinding machine), most of which were fastened to the flooring of a building or overhead, were not fixtures. 9 Haw. at 688-89. The court noted that the machines were removable without injury to themselves or to the building. *Id.* at 689. Significantly, the court also stated that "moveable machines, whose number and permanency are contingent upon the varying conditions of the business differ from engines and boilers and other articles secured by masonry and designed to be permanent and indispensable to the enjoyment of the freehold." *Id.* at 691.

The principles in *Zangerle* have also been reaffirmed in more recent Ohio cases and recognized in a legal treatise. *See In re Jarvis*, 310 B.R. 330, 337-39 (Bankr. N.D. Ohio 2004) (relying on *Zangerle* and recognizing that chattel specific to the type of business conducted on the realty will retain its character as personal property); *Perez Bar & Grill*, 2012 WL 6105324, 2012-Ohio-5820, at ¶18 (quoting *Zangerle*); 8 Powell, *supra*, § 57.05[4][b], at 57-40 (citing *Zangerle* and stating that "[t]he distinction between chattel and realty should be acknowledged inasmuch as realty is capable of many varying uses and accordingly that which may be indispensable for one particular use may be dispensable for another[]"); *see also Rothermich v. Union Planters Nat'l Bank*, 10 S.W.3d 610, 617 (Mo. Ct. App. 2000) (holding that a bowling alley's pin-setting machines were not fixtures and, as to the "adaptation" element in

15

the fixture test, "[t]he item in question should be peculiarly adapted to the real property or premises[]" and "[a]n item usable at other locations is not peculiarly adapted for use on the land in question[]").

The County concedes it knows of no case in which wind turbines like those in this case have been treated as real property. Kaheawa, however, notes that in *Energrey Enterprises, Inc. v. Oak Creek Energy Systems, Inc.*, 119 B.R. 739, 742 (E.D. Cal. 1990), a federal district court held that the towers, motors, machinery, turbines and other related articles of wind towers were *not* fixtures, whereas the foundations of the wind towers were fixtures. *Energrey Enterprises* dealt with whether a mechanic's lien existed, but the issue was resolved in part based on general fixture law and thus the case has persuasive value.

In this case, the wind turbines are only necessary to the utility of the land or realty given the particular business that Kaheawa is currently operating. The wind turbines are not accessory or useful to the land "whatever business may be carried on upon it[.]" *Zangerle*, 60 N.E.2d at 177. Thus the wind turbines are not "fixtures" and are not "real property."

We therefore agree with the Tax Appeal Court's ruling that the wind turbines are not "real property" under the MCC for purposes of the real property tax. Summary judgment in favor of Kaheawa on this issue was proper.

B.     **The MCC Provides No Time Limit In Which The County Must Make "Omitted Property" Assessments**

In its cross-appeal, Kaheawa argues that the Tax Appeal Court erred in granting partial summary judgment to the County on the issue of the retroactive property assessments. As previously noted, the County issued amended notices of property assessment in 2010 for each of the years 2007, 2008, and 2009.

The parties do not dispute the County's position that while State property is not taxable under the MCC, the Property became taxable once it was leased by the State to Kaheawa. The parties have stipulated that the lease between the State and Kaheawa is dated January 19, 2005. Moreover, based on the

declaration and deposition testimony of Marcy Martin (Martin), the Property Technical Officer for the County's Real Property Tax Division, the lease was recorded and included in a disc of recorded documents that was provided to the County sometime in the early part of 2005. According to Martin, due to a backlog of documents and a lack of manpower, the County did not discover that the Property had become taxable until December 2008. Martin further attested that, once it was determined that the Property was taxable, the County sought to assess its value, requested information from Kaheawa which Kaheawa did not provide and which delayed the assessment, and the County ultimately assessed the Property based on a valuation manual.

Kaheawa contends on appeal that the Tax Appeal Court erroneously concluded that it was immaterial when the County discovered Kaheawa's lease of the Property, and relatedly, that the Tax Appeal Court erred in holding that the County had an unlimited time period in which to make "omitted property" assessments of the Property after the County discovered the omission. Kaheawa argues that the County had notice of the Property's non-exempt status upon receiving the disc containing a copy of the lease in 2005 and improperly failed to make an assessment until five years later. Kaheawa further points to Martin's deposition in which she testified that she and others in the tax division could see the wind turbines installed on the Property. Kaheawa urges that we interpret MCC § 3.48.165(A) (2014) as mandating the County to act *upon its discovery* of property that has been omitted from the assessment lists, such that the County's delinquent assessments for tax years 2007, 2008, and 2009 are illegal and void.

The County responds that Kaheawa's arguments fail because, under a proper reading of the relevant MCC provisions, there is no time limitation on adding omitted property to assessment lists and, even if there were such time limitations, the MCC provides that an untimely assessment is not illegal or invalid.

We need not and thus do not reach Kaheawa's argument that there is a genuine issue of material fact as to when the County discovered the lease, because we agree with the Tax Appeal Court's determination that the date the County discovered the lease is not a material fact in this case. The Tax Appeal Court was correct that under the MCC "there is not an express or implied time limitation on the County of Maui's ability to make real property tax assessments, and thus the County was legally entitled to make retroactive assessments of the subject property."

Pursuant to MCC § 3.48.135 (2014), each tax year the County prepares "from the records of taxable properties a list in duplicate of all assessments made[.]" MCC § 3.48.140 (2014) allows for changes in the assessment lists as follows:

> 3.48.140 Changes in assessment lists.
>
> Except as specifically provided in this chapter, no changes in, additions to, or deductions from the real property tax assessments on the assessment lists prepared as provided in Section 3.48.135 shall be made <u>except to add thereto property or assessments which may have been omitted therefrom</u>[.]

(Emphasis added.)

MCC § 3.48.165(A) also addresses adding omitted property to assessment lists. This section provides in relevant part that, "if for any other reason any real property has been omitted from the assessment lists for <u>any year or years</u>, the director <u>shall add to the lists the omitted property</u>." (Emphasis added.)

MCC § 3.48.145 (2014) provides that assessments are valid even if not completed within the time required by law:

> 3.48.145 Validity of assessments.
>
> No assessment or act relating to the assessment or collection of taxes under this chapter shall be illegal or invalidate such assessment, levy, or collection on account of mere informality, nor because the same was not completed within the time required by law[.]

A plain reading of the MCC provisions referenced above establishes that they expressly allow for the retroactive assessment of properties for taxing purposes, and they do not

contain a time limit in which the County can place "omitted property" on the assessment lists. *See Weinberg*, 82 Hawai'i at 322, 922 P.2d at 376; *Ross v. Stouffer Hotel Co. (Hawai'i)*, 76 Hawai'i 454, 461, 879 P.2d 1037, 1044 (1994) ("It is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning.").

Kaheawa, however, emphasizes the language in MCC § 3.48.165(A) that states that the County "<u>shall</u> add to the lists the omitted property[,]" and argues that once the real property tax division knew that the lease existed, and thus that the Property had become taxable, the County had a duty to put the Property on the assessment list in a timely manner. First, even assuming there was some time limit implied in MCC § 3.48.165(A), MCC § 3.48.145 explicitly states that an assessment is not illegal or invalid because it "was not completed within the time required by law[.]" Therefore, the date on which the County "discovered" the Property's non-exempt status is not material under the provisions of the MCC. Second, Kaheawa fails to cite authority that supports its position that a mandatory duty to add omitted property to assessment lists thereby creates a time limit under which delinquent actions are deemed illegal or void.

Kaheawa cites to *Jack Endo Electric Inc. v. Lear Siegler, Inc.*, 59 Haw. 612, 616, 585 P.2d 1265, 1269 (1978) and *Aspinwall v. Tanaka*, 9 Haw. App. 396, 404, 843 P.2d 145, 149 (1992) for the proposition that the County's failure to follow the mandate of MCC § 3.48.165(A) -- which Kaheawa circuitously alleges is to add the omitted property to assessment lists *upon discovery* of the lease -- "render[s] the proceeding to which it relates illegal and void." However, *Endo* and *Aspinwall* have no bearing here because neither case stands for the proposition that mandatory language in a statute somehow creates a time limit when no such time limit exists in the applicable statute.[10]

---

[10] *Endo* and *Aspinwall* involved the interpretation of statutes that allegedly contained mandatory language and in each case the court noted that

(continued...)

Based on our reading of the relevant MCC provisions, the County was authorized to retroactively assess the Property and there is no time limit delineated in the MCC in which the County must add omitted property to assessment lists.

We further recognize, however, that there may be circumstances in which retroactive tax assessments may violate constitutional rights. In a footnote in its reply brief, Kaheawa raised for the first time the argument that the retroactive imposition of taxes presents due process concerns, citing to *McKesson Corporation v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990) and *In re Tax Appeal of County of Maui v. KM Hawaii Inc.*, 81 Hawai'i 248, 915 P.2d 1349 (1999). Kaheawa does not indicate that it raised this issue in the Tax Appeal Court and clearly did not raise the issue in its opening brief on appeal. Thus, we could deem this argument waived. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) and (7). However, because it is a significant issue that bears addressing, we consider it here. *See Clark v. Arakaki*, 118 Hawai'i 355, 360 n.5, 191 P.3d 176, 181 n.5 (2008) (noting that despite violations of HRAP Rule 28, "because of the importance of the issue raised," the court would address the arguments on the merits).

As expressed by the United States Supreme Court in *McKesson* and reiterated by the Hawai'i Supreme Court in *KM Hawaii*:

> [T]he retroactive assessment of a tax increase does not necessarily deny due process to those whose taxes are increased, though beyond some temporal point the retroactive imposition of a significant tax burden may be "so harsh and oppressive as to transgress the constitutional limitation," depending on "the nature of the tax and the circumstances in which it is laid."

---

[10] (...continued)
"if the provision is mandatory, the failure to follow it will render the proceeding to which it relates illegal and void. If the provision is directory, however, the observance of the provision will not be necessary to the validity of the proceeding." *Endo*, 59 Haw. at 616, 585 P.2d at 1269; *Aspinwall*, 9 Haw. App. at 404, 843 P.2d at 149 (block quote format and brackets omitted).

*McKesson*, 496 U.S. at 40 n.23 (citation omitted); *KM Hawaii*, 81 Hawai'i at 257 n.12, 915 P.2d at 1358 n.12 (citation omitted). In this case, the Property was retroactively assessed for tax purposes in 2010 going back to the tax years 2007, 2008, and 2009. The only harm that Kaheawa argues in this case resulting from the retroactive assessments was surprise, in that it had not planned for the taxes. Given these circumstances, Kaheawa has failed to present a basis for us to determine that the tax burden is "so harsh and oppressive as to transgress the constitutional limitation[.]" Therefore, Kaheawa's due process argument does not have merit in this case.

In sum, the Tax Appeal Court properly granted summary judgment to the County with regard to the retroactive assessments in this case.

## IV. Conclusion

Based on the foregoing, we affirm the Final Judgment issued on July 24, 2012, in the Tax Appeal Court of the State of Hawai'i.


Richard B. Rost
Deputy Corporation Counsel
County of Maui
for Appellee-Appellant/
 Cross-Appellee

Ronald I. Heller
(Brian W. Tilker,
 Austin F. McCullough
 with him on the briefs)
(Torkildson Katz, Moore, Hetherington
 & Harris)
for Taxpayer-Appellant-Appellee/
 Cross-Appellant

Vito Galati
Christopher T. Goodin
(Cades Schutte LLP)
on the briefs for *Amici Curiae*
Auwahi Wind Energy LLC

Richard Wallsgrove
(Blue Planet Foundation)
on the briefs for *Amicus Curiae*
Blue Planet Foundation