******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., concurring. I agree that a wind turbine is properly classified as real property for taxation purposes under General Statutes § 12-64 (a), and I therefore join the result reached by the majority. But I would reach that outcome by way of a different analysis. The plaintiff, Wind Colebrook South, LLC, concedes—indeed, it insists—that the wind turbines at issue are machines. In my view, that concession is dispositive because "machinery" is taxed as realty under the express terms of § 12-64 (a) unless it falls within the narrow exception carved out by General Statutes § 12-41 (c), which provides in relevant part that "[m]achinery used in mills and factories" is taxed as personalty. Wind turbines do not fit within this exception and, therefore, are classified as real property under the statutory scheme. This result is compelled by the language of the relevant statutes construed, in accordance with the applicable canons of construction. It has the virtue of avoiding a number of concerns raised by the alternative construction contained in the majority opinion.

As a preliminary point, I observe that, although I ultimately consider the outcome of the statutory analysis to be an easy call in this particular case, the relevant statutes made the task of interpretation far more difficult than necessary. Their text consists of what appears to be a randomly arranged series of specifically enumerated items deemed to be either real or personal property, conjoined with one or more broad, open-ended phrases, all without any apparent internal cohesion or structure. Sections 12-64 (a) and 12-41 (c) contain no definitions of their key terms: real property, personal property, buildings, structures, improvements, fixtures or machinery. Worse, neither statute contains any discernable standards that would enable tax assessors, taxpayers, or courts to classify property as personalty or realty. The statutes give every appearance of having been stitched together over hundreds of years by a committee of strangers. It may well be that there is an explanation for this apparent lack of legislative upkeep and maintenance; the legislature well knows how to give careful attention to such matters when it considers the task worthwhile.[1] Perhaps there is no felt need to update these particular statutes because they serve their function as written; taxation, after all, is a specialized and esoteric field, and the proper application of these statutes in all but the most unusual case may be obvious to experts and tax professionals privy to whatever unwritten conventions have emerged over time to guide the cognoscenti. In any event, this court has no choice but to decide the present case as presented, under the statutes as written.

I

The plaintiff's wind turbines[2] are taxable either as real property pursuant to § 12-64 (a) or as personal property pursuant to § 12-41 (c). It is one or the other; no claim of exemption has been raised by the taxpayer. Reciting the relevant provisions goes a long way toward illustrating why the classification scheme can lead to interpretive difficulties with respect to property that is not expressly enumerated. Section 12-64 (a) provides in relevant part: "All the following mentioned property, not exempted, shall be [taxed as real property]: Dwelling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, all other buildings and structures, house lots, all other building lots and improvements thereon and thereto, including improvements that are partially completed or under construction, agricultural lands, shellfish lands, all other lands and improvements thereon and thereto, quarries, mines, ore beds, fisheries, property in fish pounds, machinery and easements to use air space whether or not contiguous to the surface of the ground. . . ."

Section 12-41 (c) provides in relevant part: "The annual declaration of the tangible personal property owned by such person on the assessment date, shall include, but is not limited to, the following property: Machinery used in mills and factories, cables, wires, poles, underground mains, conduits, pipes and other fixtures of water, gas, electric and heating companies, leasehold improvements classified as other than real property and furniture and fixtures of stores, offices, hotels, restaurants, taverns, halls, factories and manufacturers. . . ."

I believe that the present case is an easy one under the express terms of these statutes. More particularly, I agree with the defendant that a wind turbine is properly classified as real property because it is machinery that is not located in a mill or factory.[3] "Machinery" is included as the penultimate category of real property enumerated in § 12-64 (a), listed between "property in fish pounds" and "easements to use air space whether or not contiguous to the surface of the ground." A wind turbine plainly does not fall within the single exception to this categorization, the provision in § 12-41 (c) deeming "[m]achinery used in mills and factories" to be personal property. The plaintiff's wind turbines are not located "in" any building, and certainly not in a mill or a factory. In my view, the analysis ends there.[4] The plaintiff agrees that its wind turbines are machinery. Indeed, it repeatedly insists that a wind turbine "squarely meet[s] the definition of a machine" in support of its argument that wind turbines should be classified as personal property under § 12-41 (c) and should not be treated as a "building" or a "structure" under § 12-64 (a).[5] Focusing specifically on the language in

§ 12-41 (c) providing that "cables, wires, poles, underground mains, conduits, pipes and other fixtures of water, gas, electric and heating companies" are personal property, the plaintiff contends that the wind turbines "unequivocally fall within this statute as they are machinery of an electric company and are primarily comprised of the articles specifically enumerated in . . . § 12-41 (c)." This argument is flawed for the following reasons.[6]

First, the "fixtures" provision on which the plaintiff relies does not mention the words machine or machinery; it does not appear to refer to machines at all. Cables, wires, poles, underground mains, conduits, and pipes are not machines; they are equipment used for the transmission or transportation of water, gas, electricity, and heat. Of course, machines may *include* cables, wires, pipes, and the like as component parts—the plaintiff contends that its wind turbines contain some of those components—but the enumerated items themselves are not machines or machinery, as those words are commonly and ordinarily used. Wind turbines, by contrast, are machines. As the plaintiff itself describes them in its brief, wind turbines are machines that generate power.[7] It is clear that the legislature used the word "machinery" in these statutes when it meant to do so, not only in § 12-64 (a), discussed previously, but also in § 12-41 (c), where the text refers to "[m]achinery used in mills or factories," the category immediately preceding the phrase now under consideration. Particularly in light of the proximity of this explicit reference to machinery used in mills or factories, it is not plausible that the phrase relating to transmission equipment was intended to include machinery such as the wind turbines in the present case.

We should also consider, as the majority does, whether a wind turbine, although not among the enumerated items in the provision at issue in § 12-41 (c), nonetheless falls within the intended scope of the phrase "and other fixtures" accompanying the specific enumeration under review. The canon of construction known as ejusdem generis ("of the same kind") is useful in this context because it teaches that, when " a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to . . . things of the same general kind or character as those specified in the particular enumeration, unless there is something to show a contrary intent." *Easterbrook* v. *Hebrew Ladies Orphan Society*, 85 Conn. 289, 296, 82 A. 561 (1912); accord *Eastern Connecticut Cable Television, Inc.* v. *Montville*, 180 Conn. 409, 413, 429 A.2d 905 (1980) (*Eastern Connecticut Cable*);[8] see also *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, 239 Conn. 284, 297, 685 A.2d 305 (1996).[9] The phrase "and other fixtures," as used in § 12-41 (c), must be understood by the company it keeps.[10]

The category created by the enumerated items appears to be equipment for the transmission or transportation of water, gas, electric, and heating companies. Historically, the phrase appears to originate as a common reference in statutes and cases determining the rights of telegraph, telephone, electric, and other utility companies to install transmission equipment—poles, cables, wires, conduits "and other fixtures"—on, over, or under land owned by others. See, e.g., *Connecticut Light & Power Co.* v. *Costello*, 161 Conn. 430, 434, 288 A.2d 415 (1971) (condemnation proceeding involving charter empowering plaintiff's predecessor in interest "to take real estate by condemnation for erecting and maintaining its *poles*, *wires*, *conduits and fixtures*, outside of the cities and villages, public grounds and highways for conducting electricity" (emphasis added)); *Connecticut Light & Power Co.* v. *Bennett*, 107 Conn. 587, 588, 141 A. 654 (1928) (adjudicating petition to erect "lines of *towers*, *poles and wires*, *conduits and fixtures* from its general [electricity] transmission system near Meriden to the plant . . . near Montville" (emphasis added)); *In re New York, New Haven & Hartford Railroad Co.*, 80 Conn. 623, 626, 636, 70 A. 26 (1908) (deciding whether municipality maintained authority to control street railway company's placement of conduits containing wires and other equipment for transmitting electricity notwithstanding statute authorizing such companies "to establish and maintain . . . along or across and upon, above, or under the streets, highways, and public grounds . . . suitably constructed and supported conductors, including *lines of poles and wires and underground conduits and wires, and properly supported cables, and including all proper fixtures and appurtenances*, and also to transmit therewith, thereby, or therein electricity . . . necessary for the best conduct of its business" (emphasis added; internal quotation marks omitted)). The same language found its way into our statutes governing utility companies. See, e.g., General Statutes § 16-1 (a) (22) (" '[e]lectric distribution services' means the owning, leasing, maintaining, operating, managing or controlling of *poles*, *wires*, *conduits or other fixtures* along public highways or streets for the distribution of electricity, or electric distribution-related services").[11]

It is clear from this historical background that the reference in § 12-41 (c) to "other fixtures of . . . electric . . . companies" does not include the plaintiff's wind turbines, which are used to generate electricity, and shares little in common with the "cables, wires, poles, underground mains, conduits, [and] pipes" listed in the statute, which refer to equipment used to transmit or to transport products such as electricity.

The plaintiff fares no better even if we were to remove the word "fixtures" from its statutory context and construe it broadly to mean any fixture treated as realty

for tax purposes under Connecticut law. On the factual record as developed in the present case,[12] I agree with the majority's conclusion that the plaintiff's wind turbines are not fixtures under our case law, although I reach that result on different grounds.[13] The majority concludes that the turbine assembly is not a "fixture" within the scope of § 12-41 (c). It reasons that "the turbines cannot be found along the dividing line between personal and real property, as they have no character of personalty. The turbines, as constructed, were not once chattels that only became real property through physical annexation to the land and, thus, cannot be considered a fixture." (Footnote omitted.) Part I of the majority opinion.

I cannot agree with this reasoning because it is based on a flawed premise. Whatever class of property the wind turbine "became" once affixed to the land, it unquestionably was personalty prior to being affixed to the land. Property is either personalty or realty for taxation purposes; there is no third category. See *Capen* v. *Peckham*, 35 Conn. 88, 93 (1868) ("[p]roperty is divided into two great divisions, things personal and things real"). The wind turbine plainly was not realty before being attached to the land, and, so, assuming that it was taxable property at all, it necessarily was personalty prior to installation, precisely as were the pulleys, blocks, ropes, yokes, hooks, and other components of the slaughterhouse equipment at issue in *Capen*, the leading case relied on by the majority. See id., 88–89 (preliminary statement of facts and procedural history). In any event, the only question requiring our attention is whether the wind turbine, as constructed, is a fixture and, thus, realty, *after* being attached to the land. The majority concludes that it is not, and I agree, but not because it "ha[d] no character as personalty" at some prior time.[14] Part I of the majority opinion.

Generally speaking, an item of property will be considered a "fixture" only if, once physically annexed to real property, "it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which [the realty] was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a *permanent* accession to the freehold *was intended* to be made by the annexation of the article." (Emphasis added.) *Capen* v. *Peckham*, supra, 35 Conn. 94; see *ATC Partnership* v. *Windham*, 268 Conn. 463, 480, 845 A.2d 389 (2004). It is also well established that "our test focuses on the objectively manifested intent of the annexer." *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 216, 477 A.2d 988 (1984). Simply stated, the permanency of the annexation and the intention of the annexer are crucial factors when discerning

the proper tax classification between personalty and realty.

I would hold that the wind turbine assembly at issue in the present case is not a fixture within the scope of § 12-41 (c) because it never was intended to be permanent in nature. To the contrary, the record demonstrates that the plaintiff intended to remove the wind turbines approximately twenty years after installation. The decommissioing and removal process was anticipated with sufficient certainty that the plaintiff's lender for the project required the plaintiff to reserve funds for that purpose, and the expert appraisers for both the plaintiff and the defendant testified at trial regarding the removal costs based on a useful life of twenty years.[15] My analysis is consistent with the conclusion reached by the Hawaii court in *In re Tax Appeal of Kaheawa Wind Power, LLC* v. *Maui*, 135 Haw. 202, 211, 347 P.3d 632 (App. 2014), cert. rejected, Hawaii Supreme Court, Docket No. SCWC-12-0000728 (February 19, 2015).[16]

II

I owe some explanation as to why I do not agree with the majority's conclusion that the wind turbine is a "building" and "structure" within the meaning of 12-64 (a). The short answer is that a specific statutory term governs over a more general one; the wind turbine is machinery, and that word provides a more accurate and particularized description than does either "building" or "structure." See, e.g., *Branford* v. *Santa Barbara*, 294 Conn. 803, 813, 988 A.2d 221 (2010) (it is well settled principle of statutory construction that "specific terms in a statute covering a given subject matter will prevail over the more general language of the same or another statute that otherwise might be controlling" (internal quotation marks omitted)). This point is sufficient, standing alone, to eschew the majority's construction of the statutory scheme.

The longer answer begins with the observation that the majority conducts the tax classification analysis of the entire wind turbine assembly by focusing solely on the physical characteristics of the *tower* alone, which the majority considers to be a building and/or a structure. "[A]t the very least," the majority states, "the towers of the turbines are not 'machines' . . . ." Part I of the majority opinion. The majority quotes *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 414, in support of this proposition, but that case is inapposite because the property at issue involved no *machinery* at all—the communications tower in *Eastern Connecticut Cable* supported transmission antennas, which are equipment, not machinery. See id., 410. *Eastern Connecticut Cable* therefore does not address or resolve the issue here, which is whether machinery becomes something other than machinery simply because *one of its component parts* is a tower.[17] It is not apparent why the component parts of the wind

turbine assembly should be considered separately and in isolation rather than as an integrated whole, that is, why the tower is analyzed separately from the hub, nacelle, and three blade rotor. Even if the component parts properly are considered in isolation for these purposes, some explanation is required as to why the characteristics of the *tower* should be dispositive of the tax classification of the integrated unit.

In my view, Connecticut law compels, or at least commends, a result contrary to that reached by the majority. The proper classification of the wind turbine assembly must be based on the entire integrated unit, including all of its component parts—structural and otherwise—because those parts are all physically and functionally connected and operate as a single mechanism, and no single part has any purpose or utility without the others.[18] Indeed, the statutory provisions that exempt manufacturing related "machinery"[19] from property taxation expressly define the key word as follows: " 'Machinery' means the basic machine itself, *including all of its component parts* and contrivances such as belts, pulleys, shafts, moving parts, *operating structures* and all equipment or devices used or required to control, regulate or operate the machinery, including, without limitation, computers and data processing equipment, together with all replacement and repair parts therefor, whether purchased separately or in conjunction with a complete machine, and regardless of whether the machine or component parts thereof are assembled by the taxpayer or another party. . . ." (Emphasis added.) General Statutes § 12-81 (72) (A) (i); accord General Statutes § 12-81 (76). The component parts of a machine are machinery for purposes of the property taxation statutes.

Logic leads to the same conclusion. The overall assembly is a machine, not because the plaintiff says so; see footnote 19 of the majority opinion; but because it was designed as a machine, it functions as a machine, and its valuation, even using the cost approach, is not limited to the component parts alone but includes "all of the improvements necessary to develop [the] turbines." The tower is an integral part of the wind turbines every bit as much as wings are an integral part of an airplane or the axle is an integral part of a waterwheel; each of these components serves to locate another component of the machine in a place (the air, the water) where it can perform its function.

Even if the statutes made no mention of machinery, I would find it altogether implausible that a wind turbine is a building. It is readily understandable why sheds, icehouses, and garages would be considered buildings. Airplane hangars, even portable ones, also are buildings, as that word is commonly understood, and clearly fit within the category of enumerated buildings in § 12-64 (a) because they are used to store airplanes, much

like garages store motor vehicles and silos store grain. See *Stratford* v. *Jacobelli*, 317 Conn. 863, 871, 120 A.3d 500 (2015) (holding that characteristics of airplane hangars "place them within the purview of the proper construction of the words 'sheds' or 'all other buildings' ").

But I do not see how a wind turbine is a building, especially because the phrase "all other buildings" is subject to the limiting principle contained in the ejusdem generis canon, and the phrase therefore should be understood to include only those kinds of buildings that are in the same class suggested by the specifically enumerated types of buildings surrounding the general term. A wind turbine is nothing like the kinds of buildings enumerated in § 12-64 (a). It bears no similarity in appearance or function to any of the other buildings listed. Indeed, the turbine assembly is not a building in any conventional meaning of the word, and I do not believe that anyone would refer to the wind turbine as such in common and ordinary usage. See General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language"); *Barker* v. *All Roofs by Dominic*, 336 Conn. 592, 612, 248 A.3d 650 (2020) ("[w]hen a term is not defined in a statute, we begin with the assumption that the legislature intended the word to carry its ordinary meaning" (internal quotation marks omitted)). I have not found any dictionaries that define the word "building" to include anything even remotely similar to a wind turbine (or any of its component parts). Nor have I seen any description of a wind turbine or its components using the word "building" to explain the appearance or function of that equipment.

The majority's contrary conclusion rests on the fact that the base section of the 385 foot tall tower supporting the rotor has a door, which opens into a compartment that allows access for maintenance and is used to store unspecified equipment related to the operation of the wind turbine assembly.[20] See part I of the majority opinion. According to the majority, this small compartment at the base of the tower makes the entire wind turbine a "building" because the compartment is large enough to be "occupied" by two or more people and to store unspecified maintenance items, presumably tools. Id. I disagree that this incidental feature of the overall assembly, wholly collateral and auxiliary to its true and essential function (a machine used to generate power), changes the fundamental character of the property. Using language in its ordinary sense, the wind turbine is a very large piece of production machinery connected to the ground by its tall tower, which is bolted into a concrete slab. The wind turbine does not become a "building" merely because the machinery's large size permits internal access or storage of certain items for maintenance and repair. In doctrinal terms, the interpretive tool of ejusdem generis instructs us to limit the meaning of the word "building" to things simi-

lar to the enumerated examples contained in the statute; none of the buildings listed in § 12-64 (a) indicates a legislative intention to include a machine like a wind turbine.[21]

Whether a wind turbine would come within the meaning of the phrase "all other . . . structures" in § 12-64 (a) is a closer call. As a purely lexical matter, a wind turbine is a structure in a literal sense. As the majority observes, a structure is " 'something ([such] as a building) that is constructed . . . .' " Part I of the majority opinion, quoting Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) p. 1167; see also American Heritage Dictionary (2d College Ed. 1985) p. 1208 (defining "structure" as "[s]omething made up of a number of parts that are held or put together in a particular way," "[t]he way in which parts are arranged or put together to form a whole," and "[s]omething constructed, [especially] a building or part"); Black's Law Dictionary (9th Ed. 2009) p. 1559 (defining "structure" as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together"). If the statute contained no reference to machinery, I might agree with the majority that the wind turbine assembly is a structure within the meaning of § 12-64 (a). But it is at the very least a close call for two reasons.

First, even more than the word "building," the word "structure," when used as a noun, is an extremely broad, general, and open-ended term that can refer literally to anything that is constructed, from a toy LEGO creation to a bronze statue to a fence to a skyscraper. Context therefore matters in determining the meaning of the word in any given instance, and, in the case of § 12-64 (a), one contextual clue is that the words "other . . . structures" must mean something different from (or in addition to) the word "building" because, otherwise, the phrase "all other buildings and structures" would contain a superfluous term.[22] See, e.g., *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 217, 38 A.3d 1183 ("[I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.)), cert. denied, 568 U.S. 940, 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012). Unfortunately, it is entirely unclear from the statutory text *what* meaning the words "other . . . structures" is intended to add. There are no specific structures (except buildings) enumerated in the statute, and, therefore, the rule of ejusdem generis, which significantly aided our effort to construe the word "building," is of no assistance; we cannot derive a category of like things without any specific examples to serve as a template. The word "structures" cannot

be intended to be subject to taxation as real property every object that has been constructed and occupies physical space, but the text of the statute fails to provide the limiting principle.[23]

Second, equally unilluminating is the legislative history of the 1993 amendment that added the word "structure" to the statute. See Public Acts 1993, No. 93-64, § 1 (P.A. 93-64); see also 36 H.R. Proc., Pt. 7, 1993 Sess., pp. 2436–42. Using reason as a guide, it is sensible to assume that the legislature added the word "structures" to § 12-64 (a) to make it clear that real property includes things on (or in) the land that are building-like but that lack an essential attribute of a building proper—no roof, for example. The legislative history bears this hypothesis out. The sponsor of the bill explicitly explained that the purpose of the statute was to make it clear that physical structures such as "gazebos" and "swimming pools" were taxable as real property; 36 H.R. Proc., supra, pp. 2439–40, remarks of Representative Nancy Beals; in order to generate "a small revenue increase at the municipal level and possibly a decrease in property tax appeals . . . ." Id., p. 2437, remarks of Representative Beals.

Unfortunately, this legislative history sheds no light on the legislature's intentions with regard to things like a wind turbine, which has nothing in common with gazebos and swimming pools. Interestingly, the legislative history contains no reference whatsoever to *Eastern Connecticut Cable*, decided in 1980, which held that the word "building," as used in § 12-64 (a), did not include a 385 foot tall radio tower constructed of tubular steel and bolted into a concrete block embedded 6 feet into the earth. See *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 410, 414. The 1993 legislative history is bereft of any reference, direct or indirect, to that case. We stated in *Eastern Connecticut Cable* that the radio tower was a "structure"; id., 414; which it clearly was, but we cannot ascertain from the legislative history of P.A. 93-64 whether the legislature intended its amendment to bring structures like the radio tower at issue in *Eastern Connecticut Cable* within the scope of 12-64 (a).[24] We could resolve that uncertainty by invoking the fiction of legislative omniscience to presume that the legislature had *Eastern Connecticut Cable* firmly in mind,[25] but I would have more confidence that our construction was rooted in reality if the legislative history, even obliquely, reflected some awareness of *Eastern Connecticut Cable* or some intention to include towers or other commercial assemblies, machinery, or equipment when it amended the statute to add the word "structures."

Accordingly, I respectfully concur.

[1] For example, it is clear that the legislature attends frequently to the subject of *exemptions* from property taxation for any particular class of property. See, e.g., General Statutes § 12-81 (1) (exempting United States property); General Statutes § 12-81 (12) (exempting personal property of

religious organizations devoted to religious or charitable use); General Statutes § 12-81 (18) and (19) (exempting property of veterans' organizations and veterans); General Statutes § 12-81 (31) through (35) (exempting personal property, such as household furniture, private libraries, musical instruments and electronics, watches and jewelry, and wearing apparel); General Statutes § 12-81 (57) (exempting certain types of renewable energy sources); General Statutes § 12-81 (72) (exempting machinery and equipment in manufacturing facilities). These statutes, and the frequency with which they are amended, demonstrate that the legislature is regularly engaged in the task of setting public policy with regard to property taxation generally. I acknowledge the possibility that the legislature has deliberately chosen not to revise and modernize §§ 12-64 (a) and 12-41 (c) because it has determined that the distinction between realty and personalty is relatively unimportant; perhaps what matters most is property tax exemptions, not the classification of taxable property as either realty or personalty. During oral argument in the present case, the plaintiff's counsel stated that the significance of the classification arises because different rules governing depreciation apply depending on whether the subject property is classified as real property or personal property. Compare General Statutes § 12-63 (b) (6) (permitting annual depreciation for personal property), with General Statutes § 12-62 (b) (1) (permitting depreciation of real property only once every five years).

[2] By "wind turbine," I refer to the entire assembly, including the tower, hub, nacelle, and rotor. The associated equipment that is used to operate the turbines includes wires, conduits, electrical equipment, transformers, and cabling.

[3] The majority suggests that the defendant makes efforts in its brief "to avoid conceding that the turbines were machinery." Footnote 19 of the majority opinion. I do not interpret its brief in the same manner—nor do I understand why the defendant would want to avoid "conceding" an argument that conclusively clinches its case that the wind turbines must be classified as real property. The relevant argument heading in the defendant's brief asserts in relevant part that "the trial court correctly [concluded] that the wind turbines are structures, improvements, buildings, machinery affixed to the land (if machinery) . . . taxable as real estate under § 12-64 (a)." The argument then proceeds to explain, seriatim, why the turbines are properly considered structures, improvements, buildings, and machinery. The paragraph considering the turbines as machinery provides in relevant part that, "even if the plaintiff's wind turbines or any individual components thereof are regarded as machinery, they are assessable under the provision of § 12-64 (a) that defines 'machinery' as real estate because they are attached directly to land by means of the foundations and towers, the other components of the turbines are attached to the towers, and all of the components are essential to the operation of the turbines as an integrated whole." The conditional phraseology, in my view, is not intended to eschew the characterization of the turbines as machinery but to indicate that the plaintiff cannot prevail *even on its own terms*, i.e., even if the plaintiff is correct that its wind turbines are treated as machinery. In any event, it does not matter whether the defendant embraces or resists this characterization; if the *plaintiff* deems the turbines to be machinery for purposes of property taxation, it cannot complain about the consequences of that characterization under the statutory scheme.

[4] It is hardly intuitive or obvious that machinery is real property for property tax purposes, and I make no effort to explain the result by reference to general principles of property law. Many states treat portable or movable machinery as personal property for tax purposes, unless it is a fixture. See 84 C.J.S. Taxation § 99 (2022); 35A Am. Jur. 2d 707–708, Fixtures § 1 (2021). Commentators do the same. See, e.g., 16 E. McQuillin, The Law of Municipal Corporations (3d Ed. Rev. 2003) § 44.45, pp. 202–205. Connecticut, however, evidently has historically taxed business owned machinery as part of the realty. See *Sprague* v. *Lisbon*, 30 Conn. 18, 19–20 (1861) (under then existing statutes, machinery contained in mill is taxable as part of mill regardless of machinery's prior classification as personal property); *Stamford Gas & Electric Co.* v. *Stamford*, 6 Conn. Supp. 505, 513–15 (1938) (providing overview of relevant tax legislation between 1796 and mid-nineteenth century and explaining that, in Connecticut, as of 1938, "machinery permanently affixed to land is to be assessed with such land, if devoted to manufacturing uses and with the buildings where it is incorporated therein . . . [and] the building is employed for manufacturing purposes and so, in either case, as realty"); see also *Reconstruction Finance Corp.* v. *Naugatuck*, 136 Conn. 29, 30, 68 A.2d 161 (1949) ("[t]he machinery, being attached to the real estate, would . . . have been subject to taxation in Connecticut to the same extent as real property"). There are numerous cases suggesting that

machinery has sometimes been treated as personal property, but those cases appear to involve specific exemptions applicable to machinery and equipment used in manufacturing facilities. See, e.g., *Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*, 268 Conn. 222, 233–34, 842 A.2d 1089 (2004) (upholding denial of personal property tax exemption for machinery and equipment on ground that taxpayer was related to or affiliated with seller); *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 762, 601 A.2d 1005 (1992) ("the 'manufacturing industries' exempted from taxes on the purchase of machinery and equipment and services rendered thereto were 'intended to be such as might go elsewhere' "); *Phelps Dodge Copper Products Co.* v. *Groppo*, 204 Conn. 122, 135, 527 A.2d 672 (1987) (observing that "one of the purposes behind the exemption [of certain machinery used in manufacturing] is to stimulate manufacturing industries in Connecticut"). This court has held that the generation of electricity does not constitute "manufacturing" in the cognate exemption for sales and use taxes; see *United Illuminating Co.* v. *Groppo*, supra, 755; and, thus, the wind turbines in the present case evidently would not qualify under the existing exemptions for machinery used in designated manufacturing operations. See General Statutes § 12-81 (60), (70), (72), (76) and (78). Presumably, this explains why the plaintiff has not claimed the benefit of any such exemption.

I note that there are two nineteenth century cases that do not appear to fit into the framework that I have described in this footnote regarding the generic treatment of machinery as real property under Connecticut law. See *Gaylor* v. *Harding*, 37 Conn. 508, 517–18 (1871) (referring to moveable machinery as personal property); *Swift* v. *Thompson*, 9 Conn. 63, 67 (1831) (describing machine in cotton mill as personal property). I leave it to more ambitious students of the historical treatment of fixtures in Connecticut law to resolve the apparent tension. The fact remains that the relevant statutes, as currently written, treat machinery (other than machinery used in mills or factories) as realty.

[5] The defendant agrees that the wind turbines are machinery but contends that, as such, it is real property under the plain language of § 12-64 (a).

[6] There is no dispute between the parties that the plaintiff is an electric company within the meaning of that term, as used in § 12-41 (c).

[7] The plaintiff refers in its brief to the wind turbine as a machine that "transform[s] wind energy into electricity."

[8] Not incidentally, *Eastern Connecticut Cable* applied this rule of construction as an aid to interpret a prior version of the very statute at issue in the present case, namely, § 12-64 (a). See *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 413 (holding that "the general term 'all other buildings' [in the statute] must be construed in light of the immediately preceding enumeration of buildings which includes dwelling houses, garages, barns, sheds, stores, shops, mills, ice houses, warehouses, and silos"). Section 12-64 (a) was amended in 1993 to include "all other buildings and structures," which is the phrase that is the subject of the present dispute. Public Acts 1993, No. 93-64, § 1. The effect of the 1993 amendment is discussed subsequently in this opinion.

[9] Our decision in *24 Leggett Street Ltd. Partnership* explains the parameters of the rule: "The principle of ejusdem generis applies when '(1) the [clause] contains an enumeration by specific words; (2) the members of the enumeration suggest a specific class; (3) the class is not exhausted by the enumeration; (4) a general reference [supplements] the enumeration . . . and (5) there is [no] clearly manifested intent that the general term be given a broader meaning than the doctrine requires.' 2A J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 47.18 [p. 200]. Thus, '[t]he doctrine of ejusdem generis calls for more than . . . an abstract exercise in semantics and formal logic. It rests on particular insights about everyday language usage. When people list a number of particulars and add a general reference like "and so forth" they mean to include by use of the general reference not everything else but only others of like kind. The problem is to determine what unmentioned particulars are sufficiently like those mentioned to be made subject to the [clause's] provisions by force of general reference.' " *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, supra, 239 Conn. 297.

[10] The rule of construction known as noscitur a socii ("it is known by its associates") canonizes the commonsense idea that, "[w]hen determining the legislature's intended meaning of a statutory word, it also is appropriate to consider the surrounding words . . . . By using this interpretive aid, the meaning of a statutory word may be indicated, controlled or made clear by the words with which it is associated in the statute." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Balloli* v. *New Haven Police Dept.*, 324 Conn. 14, 23, 151 A.3d 367 (2016).

[11] The terminology has been used outside of Connecticut, as well. See *Western Union Telegraph Co.* v. *Louisville & Nashville Railroad Co.*, 258

U.S. 13, 16 n.1, 42 S. Ct. 258, 66 L. Ed. 437 (1922) (Kentucky statute involving right of "any telegraph, telephone, electric light, power, or other wire company" to install "poles, cables, wires, conduits, or other fixtures" on any property over which railroad company enjoys easement or right of way (internal quotation marks omitted)); *Louisville* v. *Cumberland Telephone & Telegraph Co.*, 224 U.S. 649, 663, 32 S. Ct. 572, 56 L. Ed. 934 (1912) (addressing right of telephone company to install "poles, conduits, wires, and fixtures" on public streets).

[12] We review the trial court's factual findings on the elements of the fixture analysis, such as the intent of the annexer, under a clearly erroneous standard. "The question as to whether a particular piece of property is personalty or a fixture is a question of fact. *Vallerie* v. *Stonington*, 253 Conn. 371, 372–73, 751 A.2d 829 (2000); *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, [193 Conn. 208, 217, 477 A.2d 988 (1984)]; see also *Pfeifle* v. *Tanabe*, 620 N.W.2d 167, 174 (N.D. 2000) (whether parties intended to treat existing fixtures as personalty and thereby constructively severed property from realty is question of fact). As such, our review . . . is limited to deciding whether the findings of the trial court were clearly erroneous." *ATC Partnership* v. *Windham*, 268 Conn. 463, 479, 845 A.2d 389 (2004). I agree with the majority, however, that the trial court's interpretation of the relevant statutes regarding the classification of property is subject to plenary review. See part I of the majority opinion.

[13] Normally, categorizing property as a fixture results in its classification as real property for tax purposes. See, e.g., *ATC Partnership* v. *Windham*, 268 Conn. 463, 472, 845 A.2d 389 (2004). The result is reversed in the present case—the wind turbine would be taxed as personal property as a fixture—only because the plaintiff argues that the wind turbines fall within the "other fixtures" provision in § 12-41 (c), which carves out an exception to the general rule.

[14] Again, to be clear, I would not construe the statute to extend to all fixtures under the broad definition of that term because I believe that the legislature intended the word to be understood as limited by the enumerated examples, as discussed previously. The present discussion explains why the plaintiff does not prevail even under the broader definition.

[15] The trial court summarized this evidence: "Both the plaintiff's expert . . . and the defendant's expert . . . presented written appraisals and credible testimony that the turbines have an approximate useful life of at least twenty years. The plaintiff has agreed to decommission the turbines at the end of their useful life by unfastening the bolts that currently affix the turbines to the concrete foundations on 29 Flagg Hill Road and removing the turbines altogether. Because of the anticipated cost and complexity of the decommission[ing] process, the plaintiff's lender for the project required the plaintiff to hold approximately $1 million in reserve to complete the process. The plaintiff's expert has estimated the cost of removal to be between $1,650,000 and $3,200,000."

[16] For reasons that are not clear to me, the majority seeks to distinguish *In re Tax Appeal of Kaheawa Wind Power, LLC*. See footnote 22 of the majority opinion. The confusion may arise because the conclusion that the wind turbine was not a fixture resulted in it being classified as personal property under Hawaii law. See *In re Tax Appeal of Kaheawa Wind Power, LLC* v. *Maui*, supra, 135 Haw. 211. Under our statutory scheme, by contrast, the same conclusion results in the opposite classification; if the wind turbine assembly is not a "fixture" owned by an electric company within the meaning of § 12-41 (c), it is real property under Connecticut law pursuant to § 12-64 (a). Unlike Connecticut, Hawaii, like many other jurisdictions, treats machinery as personal property unless it is a fixture. See 84 C.J.S. Taxation § 99 (2022); Annot., "What Is Within Tax Exemption of Machinery, Tools, Apparatus, Etc., Used in Manufacturing," 172 A.L.R. 313, 313–16 (1948); see also footnote 4 of this opinion. In any event, I disagree with the majority that Hawaii's definition of a "fixture" is inconsistent with or substantially different from the meaning of that term under Connecticut law. Hawaii uses "[t]he traditional [common-law] test for determining whether an item of personal property has become a 'fixture' [which] requires three elements: (1) the actual or constructive annexation of the article to the realty, (2) the adaptation of the article to the use or purpose of that part of the realty with which it is connected, and (3) the intention of the party making the annexation to make the article a permanent accession to the freehold." (Emphasis omitted; internal quotation marks omitted.) *In re Tax Appeal of Kaheawa Wind Power, LLC* v. *Maui*, supra, 210. The analysis in Connecticut is expressed in different terms, but the inquiries are not incompatible, as

the majority suggests. Specifically, I do not agree that Connecticut omits consideration of the second prong of the analysis articulated in *In re Tax Appeal of Kaheawa Wind Power, LLC*, "the adaptation of the article to the use or purpose of that part of the realty with which it is connected . . . ." (Emphasis omitted; internal quotation marks omitted.) Id. The Connecticut analysis puts the issue in these terms: "[T]he nature and the adaptation of the article annexed to the uses and purposes to which [the realty] was appropriated at the time the annexation was made . . . ." *Capen* v. *Peckham*, supra, 35 Conn. 94; see *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, supra, 193 Conn. 219 (observing that "the trial court's finding that the tanks were not specially adapted to some special or peculiar use of the land, when viewed in light of the trial court's concomitant finding that the tanks were an 'indispensable element' to the business . . . is also consistent with the trial court's conclusion that the tanks are personalty" and not fixtures); *Toffolon* v. *Avon*, 173 Conn. 525, 535, 378 A.2d 580 (1977) (upholding finding by trial court that processing plant, which was specially adapted for prospective use, constituted fixture); *Merritt-Chapman & Scott Corp.* v. *Mauro*, 171 Conn. 177, 185, 368 A.2d 44 (1976) (concluding that, unlike prior cases in which buildings had been adapted for particular uses, "the building . . . as constructed, was not adapted to bowling alleys, but the alleys were installed in a vacant area in a shopping center already built and adapted to produce rental income from any source"); *Cleaveland* v. *Gabriel*, 149 Conn. 388, 392, 180 A.2d 749 (1962) (noting that, because "some of the equipment . . . was adapted primarily to [be] use[d] in a barn, there was some objective indication of an intention to annex the equipment to the barn"); *Lesser* v. *Bridgeport-City Trust Co.*, 124 Conn. 59, 64, 198 A. 252 (1938) (recognizing "the proposition that [when] a building is specially adapted to certain uses, the instrumentalities to carry out those purposes are ordinarily considered a part of the realty" as fixtures); *Radican* v. *Hughes*, 86 Conn. 536, 543, 86 A. 220 (1913) (concluding that small toolhouse that "was not adapted to or necessary for the use and enjoyment of the land [on] which it stood" is not fixture); *Stockwell* v. *Campbell*, 39 Conn. 362, 365 (1872) (concluding that furnaces, for which "[p]its were made in the bottom of the cellar [that were] adapted to [the furnaces] in size and depth, and for the express purpose of receiving them," were fixtures); *Fernwood Realty, LLC* v. *AeroCision, LLC*, 166 Conn. App. 345, 362–63, 141 A.3d 965 (concluding that electrical components that were specifically adapted to property were fixtures), cert. denied, 323 Conn. 912, 149 A.3d 981 (2016). In other words, the personalty affixed to the realty is more likely to be considered part of that realty if it becomes "indispensable to the [utility] of the freehold" or "peculiarly adapted to the real property"; an item that is removable and "usable at other locations is not peculiarly adapted for use on the land in [question] . . . ." (Internal quotation marks omitted.) *In re Tax Appeal of Kaheawa Wind Power, LLC* v. *Maui*, supra, 211.

[17] The majority accurately summarizes the trial court's findings in this regard: "The turbines, which collectively weigh 418,657 pounds, each consist of a tower, a hub, a nacelle, and a rotor with three blades that have a 338 foot diameter."

[18] It cannot be that the relative size of the component parts determines the classification. Even if it were so, the tower is large (328 feet tall), but the rotor is even larger (338 feet in diameter).

[19] General Statutes § 12-81 (72) and (76) provides exemptions for machinery that is "installed in a manufacturing facility and claimed on the owner's federal income tax return as either five-year property or seven-year property *. . . and the predominant use of which is for manufacturing, processing or fabricating* . . . ." (Emphasis added.) Subdivision (72) relates to property assessments prior to October 1, 2011, whereas subdivision (76) relates to property assessments commencing thereafter. Although the plaintiffs made no claim that its wind turbines fall within this exemption, the definition of machinery contained therein is part of the same statutory scheme and bears on the meaning of the same word used in § 12-64 (a). See, e.g., *Connecticut Podiatric Medical Assn.* v. *Health Net of Connecticut, Inc.*, 302 Conn. 464, 475–76, 28 A.3d 958 (2011) (examining related statute to construe meaning of statutory term).

[20] The trial court explained that the tower "consists of five sections: the top section, midsections A, B, [and] C, and a door section." The trial court described the door section as the "enclosed interior of the base . . . [which] was designed to provide enough space for more than one individual to work therein, whether to monitor the computer systems and other equipment stored therein or [to] access other interior areas of the tower to do any

necessary maintenance or repairs." The trial court later observed that this base area is "used for storage of equipment related to [the] operation [of the turbine]."

[21] Very large machinery often contains internal space compartments that may allow for internal access for operation, repair, or maintenance. The compartment within the base of the wind turbine can be used to store tools or similar items. The same can be said of other large machines used in the construction, mining, and power production industries. Indeed, some large machines are designed to be occupied by an operator in an enclosed compartment. No one would call such a machine a building.

[22] The implication is especially strong in the present case because, prior to 1993, the statute expressly referred only to buildings, not structures. The version of § 12-64 in effect before the 1993 amendment provided for the taxation of real property, including "[d]welling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, *all other buildings* . . . ." (Emphasis added.) General Statutes (Rev. to 1985) § 12-64. The legislature added the term "structures" to § 12-64 (a) when it enacted § 1 of Public Acts 1993, No. 93-64.

[23] I agree with the majority that the rule of ejusdem generis is not available to assist our interpretation of the words "other . . . structures," but not because the legislative history so clarifies the meaning that the rule is inapplicable, as the majority posits. See part I of the majority opinion. Ejusdem generis cannot be used because the canon loses all utility when, as here, there are no specific examples of structures (as opposed to buildings) enumerated in the statute to inform the meaning of the general term. I disagree in particular with the suggestion that the canon becomes inapplicable because the legislative history includes a statement that the "purpose [of the bill] was to 'simply clarify that *all* structures and improvements not exempted are subject to the property tax' . . . ." (Emphasis in original.) Id., quoting 36 H.R. Proc., Pt. 7, 1993 Sess., pp. 2436–37, remarks of Representative Nancy Beals. That statement begs the same question left open by the statute: what defines or characterizes other *structures*, "all" of which are real property? The relevant legislative history only magnifies the ambiguous meaning of the word "structures" because the illustrations supplied by the sponsor of the relevant legislation to illustrate the word's meaning—gazebos and swimming pools—are nothing at all like a wind turbine or a comparable item of property.

[24] Tax assessors across Connecticut are generally instructed to classify "towers" as personal property. Property Code and Description No. 22 of Connecticut's Personal Property Declaration applies to "[c]ables, conduits, pipes, poles, towers (if not currently assessed as real estate), underground mains, wires, turbines, Class I Renewables, etc., of gas, heating, or energy producing companies, telephone companies, water and water power companies."

[25] See, e.g., *State* v. *Ashby*, 336 Conn. 452, 493, 247 A.3d 521 (2020) (observing that this court may presume that legislature was aware of its decision interpreting statute when legislature later passed statutory amendment). Numerous canons of construction assume legislative omniscience in one respect or another. See R. Posner, "Statutory Interpretation—in the Classroom and in the Courtroom," 50 U. Chi. L. Rev. 800, 811 (1983) ("Most canons of statutory construction go wrong not because they misconceive the nature of judicial interpretation or of the legislative or political process but because they impute omniscience to Congress. Omniscience is always an unrealistic assumption, and particularly so when one is dealing with the legislative process."). Here, I refer specifically to the "[the] fiction propos-[ing] that the legislature, as the agent responsible for enacting statutes, is somehow 'aware' when it enacts those statutes of all its past enactments as well as their application by courts and agencies, and that courts may proceed to apply the legislature's enactments in light of that supposed awareness." K. Petroski, "Fictions of Omniscience," 103 Ky. L.J. 477, 478 (2014–2015).